# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CAITLIN CARNEY, | ) | CASE NO. 5:15cv2309 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| THE UNIVERSITY OF AKRON, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

There are several motions before the Court. First, defendant Ohio Department of Higher Education ("ODHE") moves, pursuant to Rule 12(c) and Rule 12(b)(1) of the Federal Rules of Civil Procedure, for judgment on the pleadings. (Doc. No. 13.) Plaintiff Caitlin Carney ("plaintiff" or "Carney") has filed a response in which she indicates that she intends to dismiss ODHE from this action. (Doc. No. 25.) Second, defendants University of Akron ("UA"), Matthew Wilson ("Wilson"), and Carolyn Dessin ("Dessin") (collectively "University defendants") also seek dismissal under Rule 12(c) and Rule 12(b)(1). (Doc. No. 15.) Plaintiff opposes this motion (Doc. No. 23), and University defendants have filed a reply. (Doc. No. 35.) Finally, plaintiff moves for leave to file her first amended complaint ("FAC") *instanter*. (Doc. No. 24.) University defendants oppose the motion to amend (Doc. No. 27), and plaintiff has filed a reply. (Doc. No. 28.) For all of the reasons that follow, plaintiff's motion to amend is granted in part, ODHE's motion for judgment on the pleadings is denied as moot, and University defendants' dispositive motion is granted.

## I. BACKGROUND

In this federal action, plaintiff challenges her expulsion from UA's law school, claiming that defendants violated her constitutional and state law rights when UA's Student Discipline Committee ("Committee") determined that expulsion was warranted because plaintiff plagiarized a substantial portion of her student thesis. She raises claims under the Due Process Clause and 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973. She also brings claims under Ohio statutory and common law.

In May of 2008, plaintiff graduated with honors from the University of Toledo with a 3.89 grade point average. (Doc. No. 24-1 ¶ 9.) After working for several years, plaintiff applied for, and was accepted into, the 2012 juris doctoral ("J.D.") program at UA. Prior to her admission, she was awarded the Board of Trustees Scholarship. (*Id.* ¶ 10.)

Plaintiff has what she describes as a "documented psychiatric history of ADHD, anxiety and depression[,]" and was receiving medical care for these conditions when she started law school. (*Id.* ¶ 11.) Her symptoms intensified shortly after she arrived at UA, and she met with Professor Stephen Cook, "who operated the Sounding Board program, which was designed to provide assistance to struggling students." (*Id.* ¶ 12.) She received counseling from Eric Hayden, Ph.D., at UA's Counseling Center, "several times" between October and December of 2012. (*Id.*) During this first year, she also "reported her depression and anxiety" to her legal writing instructor. (*Id.* ¶ 13.)

In December of 2013, plaintiff applied to obtain a Masters in Law ("L.L.M.") in Intellectual Property from UA. To obtain an L.L.M., plaintiff was required to prepare a thesis, and plaintiff elected to have her thesis also qualify as her writing requirement for law school. (*Id.* ¶ 14.) Professor Ryan Vacca served as her supervisor for her L.L.M. thesis. (*Id.* ¶ 15.)

2

Plaintiff's medical misfortunes continued. In 2014, she sought treatment for "severe and chronic" back pain. (*Id.* ¶ 16.) On November 15, 2014, she fell down a flight of stairs at a sporting arena and was treated in a local emergency room. On November 17, 2014, she "notified her professors about her fall[,]" and asked that her classes be recorded because she was unable to attend. (*Id.* ¶ 17.) The fall also had a negative effect on her mental state, and she sought treatment for depression and anxiety at UA's Student Health Center, where she received prescriptions for various medications. (*Id.* ¶ 18.)

In early 2015, plaintiff contracted bronchitis and was "extremely ill" for three weeks, and received treatment for this illness. (*Id.* ¶ 19.) On February 16, 2015, she suffered a concussion as a result of hitting her head on the side of her car door. The concussion was accompanied by blurry vision, dizziness, headaches, and nausea. (*Id.* ¶ 21.) She sought treatment, and her treating physician restricted her from school for one week, until February 23, 2015. Plaintiff emailed her professors "to advise them of her concussion and that she needed to miss classes." (*Id.*)

On March 16, 2015, Professor Vacca sent an email to plaintiff requesting that she submit a draft of her thesis by March 30, 2015. Plaintiff concedes that she did not submit a draft by this deadline and, on April 1, 2015, Professor Vacca again requested that plaintiff turn in her thesis. Plaintiff responded on April 3, 2015, advising Professor Vacca that she was "experiencing a difficult year, both personally and professionally, and that she would provide a draft of the thesis as soon as possible." (*Id.* ¶ 22.)

Plaintiff was again hospitalized from April 10, 2015 until April 14, 2015 for "extreme gastrointestinal and back pain." (*Id.* ¶ 23.) On April 13, 2015, during her hospitalization, plaintiff emailed Ivy Banks ("Banks"), the Assistant Dean of Law Student Affairs for UA, and asked for assistance in advising her professors "about her hospitalization so that classes could be

3

recorded for her." (*Id*. ¶¶ 5, 24.) At that time, she informed Banks that her thesis was not finished. The following day, April 14, 2015, Banks instructed plaintiff to submit her thesis to Professor Vacca by April 17, 2015, and further directed her to contact one of her professors—Professor John Sahl—directly about missing class. (*Id*. ¶ 24.) Banks's revised deadline of April 17, 2015 came and went without plaintiff submitting her thesis. On April 21, 2015 of the following week, plaintiff again emailed Banks to request a meeting. In her email, she "stated that she continued to struggle with medical problems and that she was extremely worried about the effect of her poor health on her academic performance. [She] stated that she wanted to discuss her options." (*Id*. ¶ 25.) There is no indication from the FAC whether such a meeting was ever scheduled.

Plaintiff emailed Banks about her thesis for a third time on April 24, 2015, and inquired as to whether she could substitute a previously completed writing assignment in place of her thesis. Banks inquired as to whether plaintiff had spoken with Professor Vacca. (*Id*. ¶ 26.) Plaintiff does not allege that she followed up with Professor Vacca, and, if she did, whether Professor Vacca rejected the option. She did, however, return to the hospital four days later on April 28, 2015, to receive an epidural injection. In addition to receiving anesthesia, plaintiff was administered pain medication and muscle relaxants. (*Id*. ¶ 27.) She continued to work on her thesis, even though she was "sleep deprived" and under the influence of "heavy narcotics as prescribed by her physicians." (*Id*. ¶ 28.) She avers that she was still feeling the effects of the medication when she finally submitted her thesis on April 30, 2015, a month after it was first requested by Professor Vacca. (*Id*. ¶ 30.) Because plaintiff submitted her thesis so close to graduation, Banks advised plaintiff that while the thesis could still satisfy her writing requirement for her J.D., she would not earn her L.L.M. until January 2016, the next degree

conferral date. (*Id*. ¶ 31.)

Plaintiff then turned her attention to her final exams. On May 4, 2015, plaintiff sent an email to Banks to request additional time to complete her finals. She explained that "due to her back pain, she was concerned about whether she would be able to sit for a three hour examination period. [Plaintiff] explained that she was worried about her back pain impacting her exam performance." (*Id*. ¶ 32.) Plaintiff alleges that she was not afforded any additional time to take her examinations. (*See id*. ¶ 32.)

At some point after he received plaintiff's thesis, Professor Vacca submitted the writing to defendant Dessin, who served as chairperson of the Committee. (*Id*. ¶ 33.) On May 5, 2015, Dessin contacted plaintiff by email and "demanded" a meeting the following morning. Because she was preparing for a final examination and was still feeling sleep deprived, plaintiff requested that the meeting take place at a later time. Dessin insisted that the meeting take place on May 6, 2015. (*Id*. ¶¶ 34-35.) During the meeting, Dessin accused plaintiff of submitting a thesis with "substantial unattributed material." (*Id*. ¶ 36.) She presented plaintiff with six pages of the thesis and "encouraged [plaintiff] to admit that those pages failed to contain proper attribution." (*Id*.) Plaintiff is adamant that Dessin never used the word "plagiarism," and assured plaintiff that "she had seen papers much worse." (*Id*.) According to plaintiff, Dessin also advised plaintiff that admitting to "inadequate citation was a minor offense that would not prevent graduation, let alone result in expulsion." (*Id*. ¶ 37.) Plaintiff alleges that, in reliance on these representations, she "admitted to what she believed was a minor offense reflected in six pages of her thesis." (*Id*.) After the meeting, Dessin emailed plaintiff a copy of the Student Disciplinary Code ("Disciplinary Code."). (*Id*. ¶ 38.) That same day (May 6, 2015), plaintiff contacted Banks by email and requested a meeting to discuss her options. Plaintiff also informed Banks that she "did

not feel she was in any condition to take her examinations." Banks told plaintiff that she would have to take her finals as scheduled. (*Id.* ¶ 39.)

On May 7, 2015, Dessin advised plaintiff that the Committee would meet to determine what sanction plaintiff would receive for violating the Disciplinary Code. (*Id.* ¶ 40.) Plaintiff requested that Dessin forward her the evidence that would be presented to the Committee. "Dessin responded that she would try to send [plaintiff] the entire marked-up paper, but that because of her grading responsibilities, she may not have the paper finalized until shortly before the hearing." On May 14, 2015, the day before the hearing, Dessin emailed plaintiff a newly marked copy of her thesis identifying substantially larger portions of the paper that Dessin believed did not contain proper attribution. (*Id.* ¶ 42.)

At the May 15, 2015 hearing, plaintiff was represented by counsel, and was permitted to offer the testimony of several witnesses. Her then-current and former employers, an attorney and judge, respectively, served as character witnesses. Plaintiff and her father also provided testimony at the hearing. (Doc. No. 15-3 at 168-69.)

The FAC focuses upon defendant Dessin's role in the hearing. According to plaintiff, "Dessin functioned as an investigator, prosecutor <u>and</u> witness and, for the first time, directly accused [plaintiff] of out-right plagiarism. She directed presentation of witnesses and participated in questioning." (FAC ¶ 45 (emphasis in original).) Plaintiff also alleges that Dessin "refused to discuss" plaintiff's health issues, and did not permit her to "present a binder containing her medical records." (*Id.* ¶ 48.) Nonetheless, both plaintiff and her father were permitted to offer testimony regarding plaintiff's medical conditions. (Doc. No. 15-3 at 169.)

According to plaintiff, Dessin violated the Disciplinary Code "when she testified before fellow Committee members about Professor Vacca's observations as to attribution within the

6

thesis, but also about her own review of [plaintiff's] citations[.]" (*Id*. ¶ 45.) Plaintiff further charges that Dessin "functioned as a judge <u>and</u> 'jury'" when she participated in deliberations and a vote that resulted in a 4 to 3 decision in favor of recommending plaintiff's expulsion.[1] (*Id*. ¶ 47 (emphasis in original).)

With the assistance of counsel, plaintiff appealed the Committee's recommendation, highlighting what she believed were procedural violations at the hearing and UA's failure to accommodate her. (*Id*. ¶¶ 49-50.) Plaintiff claims that on June 22, 2015, defendant Wilson, Dean of UA, "summarily issued a decision affirming the recommendation of the Committee to expel [plaintiff]" from UA "without discussing the procedural violations raised in [plaintiff's] appeal." (*Id*. ¶ 51; *see id*. ¶ 3.)

Plaintiff filed the instant federal action on November 10, 2015. In addition to the afore-mentioned federal claims, the initial complaint also raised a state law statutory claim under Ohio Rev. Code § 4112.022, and common law claims for breach of contract, promissory estoppel, and intentional and negligent infliction of emotional distress. (Doc. No. 1.) In addition to UA, Wilson, and Dessin, the original complaint also raised claims against ODHE. On January 28, 2016, plaintiff sought leave to amend her complaint *instanter*. (*See* Doc. No. 24.) The proposed FAC eliminates all state law claims and all claims against ODHE, and adds an individual defendant—Banks. As proposed, Count One is a procedural due process claim, under 42 U.S.C. § 1983, against Wilson and Dessin in their professional and personal capacities. Count Two raises a substantive due process claim, also under 42 U.S.C. § 1983 and against Wilson and Dessin in their professional and personal capacities. Count Three alleges a violation of Title II of the ADA against UA, Wilson, Dessin, and Banks. Count Four contains allegations that are

---

[1] The Committee was comprised of Dessin, five additional faculty members, and one UA student. (*Id*. ¶ 44.)

similar to Count Three and is brought under the Rehabilitation Act.[2] (FAC.)

Conspicuously absent from either pleading is any allegation that the charge of plagiarism was unfounded, or that plaintiff did not fail to properly attribute sources in her thesis. Moreover, at no time during the briefing that followed has plaintiff maintained that she was wrongly accused of violating the Disciplinary Code. Instead, plaintiff admitted at the May 15, 2015 hearing that she had plagiarized her thesis. She reaffirmed this fact, once again, during her appeal in which she advocated for a less harsh sanction for her Disciplinary Code violation. (Doc. No. 15-3 at 168, 171.)

## II. PLAINTIFF'S MOTION TO AMEND

Plaintiff filed her motion to amend simultaneously with her opposition to the University defendants' motion for judgment on the pleadings. She indicates that she had "recently identified additional documents and information in support of her claims for relief, and [that she] seeks to streamline her complaint by dismissing an unnecessary party and claims." (Doc. No. 24 at 234.[3]) Rule 15(a)(2) of the Federal Rules of Civil Procedure governs plaintiff's motion to amend. It provides, in relevant part, that the Court should "freely give leave" to amend pleadings "when justice so requires." "Nevertheless, denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility or amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222

---

[2] Counts Three and Four are raised against the individual defendants in both their personal and professional capacities.

[3] All references to page numbers are to the page identification numbers generated by the Court's electronic filing system.

(1962)). Courts should freely give leave to amend in the absence of these factors. *Foman*, 371 U.S. at 182.

Defendants do not oppose plaintiff's motion to amend to the extent it seeks to dismiss the state law claims and dismiss ODHE as a party defendant. Defendants also do not object to the proposed FAC to the extent it dismisses the due process claims against UA. Plaintiff is, therefore, granted leave to make these changes to the pleadings. Accordingly, ODHE is dismissed from this action, and its Rule 12(c) motion for judgment on the pleadings is denied as moot. University defendants object to the remainder of plaintiff's motion, arguing that the FAC fails to cure the pleading deficiencies identified by them in their Rule 12(c) motion. (Doc. No. 27 at 273.) University defendants, therefore, ground their opposition to the balance of plaintiff's motion in futility.

A motion to amend a complaint should be denied as futile when the complaint as amended would not survive a motion to dismiss. *See Jenkins v. Foot Locker, Inc*., 598 F. App'x 346, 350 (6th Cir. 2015) (citation omitted); *Brown v. Owens Corning Inv. Review Comm*., 622 F.3d 564, 574 (6th Cir. 2010). Indeed, "[f]utility, alone, can constitute a satisfactory ground for denying a motion for leave to amend." *Charity v. GMAC Mortg. Inv., Inc*., No. 4:09-cv-02958, 2010 WL 3648949, at *13 (N.D. Ohio Sept. 14, 2010) (citing *Wiedbrauk v. Lavigne*, 174 F. App'x 993 (6th Cir. 2006)). Thus, in order to rule on the remainder of plaintiff's motion to amend, the Court must determine whether University defendants are entitled to judgment on the pleadings on plaintiff's federal claims. *See generally Bishop v. Lucent Techs., Inc*., 520 F.3d 516, 521 (6th Cir. 2008) (A motion to amend is frequently entertained in conjunction with a motion to dismiss and can serve as an effective way of curing pleading deficiencies and more quickly reaching the merits of a dispute.) (citation omitted).

### III. University Defendants' Rule 12(c) Motion

#### A.    Standard of Review

The standard of review for a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is the same as for a motion to dismiss under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co*., 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd*., 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff*, 133 F.3d at 421 (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc*., 32 F. Supp. 3d 869, 874-75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint") (quotation marks and citations omitted); *see also Williams v. CitiMortgage, Inc*., 498 F. App'x 532, 536 (6th Cir. 2012) ("if a factual allegation assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document") (quotation marks and citation omitted).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8. Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8

10

still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570 (citation omitted).

### B.    Plaintiff's Motion to Strike

In connection with her opposition to University defendants' Rule 12(c) motion, plaintiff has moved to strike the exhibits attached to the dispositive motion. (Doc. No. 23 at 215.) Appended to the University defendants' Rule 12(c) motion are the following documents: (1) a May 8, 2015 letter from defendant Dessin to plaintiff notifying her of the disciplinary hearing (Doc. No. 15-1); (2) a May 15, 2015 letter from Dessin outlining the findings from the Committee's hearing (Doc. No. 15-2); (3) a June 4, 2015 letter from plaintiff's counsel to defendant Wilson appealing the Committee's decision (Doc. No. 15-3); (4) a May 15, 2015 email from defendant Wilson explaining plaintiff's appellate rights (Doc. No. 15-4); and (5) a June 17, 2015 letter from defendant Wilson announcing the decision on appeal (Doc. No. 15-5). Additionally, University defendants have attached a copy of the Disciplinary Code to their reply brief. (Doc. No. 35-1.) Defendants responded to this motion simultaneously with the filing of their reply brief in support of their request for judgment on the pleadings. (Doc. No. 35.)

In deciding a motion to dismiss and/or a motion for judgment on the pleadings under Rule 12, the Court generally may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment under Rule 56. As the Sixth Circuit has held, however, there are a number of exceptions to this rule. Indeed, it is well settled that, in ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Commercial Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 335 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citations omitted). Thus, while a plaintiff is under no obligation to attach to her complaint documents upon which her action is based, a defendant is free to introduce those documents if the plaintiff fails to do so. *See Weiner v. Klais & Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997) (citations omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id*. (citation omitted). Accordingly, University defendants argue that each of the documents attached to its briefing is referenced in the FAC and central to plaintiff's claims.

A review of the FAC reveals that plaintiff clearly references the Disciplinary Code, including the fact that she received a copy of this document from defendant Dessin, as well as the notice of the hearing that was provided by defendant Dessin. (FAC ¶¶ 38, 40.) Moreover, the Disciplinary Code, which outlines the various disciplinary actions available to UA in the event of a code violation, is central to plaintiff's claim that she received insufficient notice of the nature

of disciplinary hearing and the possible outcomes. In the same way, the FAC also specifically discusses the events taking place at the hearing, and references the ruling of the Committee. These events are also integral to plaintiff's constitutional claims, and she does not suggest otherwise (*Id*. ¶¶ 44-48.)

Plaintiff takes particular exception to University defendants' reliance on her counsel's June 4, 2015 letter appeal to Dean Wilson (*see* Doc. No. 15-3), and Dean Wilson's June 17, 2015 letter decision (*see* Doc. No. 15-5.) Yet, the FAC expressly references her appeal of the Committee's ruling (*see* FAC ¶¶ 49-50), and her counsel's letter to Dean Wilson *is* her appeal. The FAC also quite specifically discusses the results of the appeal (*see id*. ¶ 51), and Dean Wilson's letter *is* the ruling on appeal. Again, because these documents are referred to in the FAC and are central to the claims raised therein, the Court may properly consider these documents without converting the Rule 12 motion into one for summary judgment.[4] Plaintiff's motion to strike, therefore, is denied.

## C.    Sufficiency of the Pleadings

Accepting the factual allegations in the FAC as true, to the extent they are not otherwise contradicted by the record, the Court evaluates whether these allegations are sufficient, as a matter of law, to set forth the constitutional claims raised by plaintiff.

---

[4] In so ruling, the Court rejects plaintiff's argument that the documents attached to University defendants' Rule 12(c) documents were not properly authenticated. Despite this general objection, plaintiff does not challenge the validity or accuracy of these documents, nor does she dispute that she received these documents. *See Floyd v. Bank of Am., N.A.*, No. 1:13-cv-2072, 2014 WL 3732591, at *3 (N.D. Ohio July 25, 2014) (courts are permitted to consider "unauthenticated documents on a motion to dismiss where the opposing party 'do[es] not question the substantive validity, accuracy, or completeness of the documents[]'") (quoting *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 642 (N.D. Ohio 2012)).

*Procedural Due Process*

In Count One of the FAC, plaintiff alleges that defendants Wilson and Dessin violated her procedural due process rights. According to plaintiff, the individual defendants (1) misled her as to the nature and seriousness of the charges against her; (2) refused to delay the hearing and afforded her insufficient time in which to prepare for the hearing; and (3) provided a hearing that was tainted by the fact that Dessin served as the investigator, prosecutor, witness, and one of the decision-makers.

The Sixth Circuit has held that "the Due Process Clause is implicated by higher education disciplinary decisions." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005) (collecting cases). "'Once it is determined that due process applies, the question remains what process is due.'" *Id*. at 633-34 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). The amount of process actually "due will vary according to the facts of each case and is evaluated largely within the framework laid out by the Supreme Court in *Mathews v. Eldridge*,[5] 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)."[6] *Id*. at 634 (citation omitted). At a minimum, however, "the student 'must be given *some* kind of notice and afforded *some* kind of hearing.'" *Doe v. Univ. of Cincinnati*, No. 1:15-CV-681, 2016 WL 1161935, at *9 (S.D. Ohio Mar. 23, 2016) (quoting *Goss v. Lopez*, 419 U.S. 565, 579, 95 S. Ct. 729, 42 L. Ed.

---

[5] Applying the test in *Matthews*, the Court considers and balances the following factors: (1) the seriousness of the charge and potential sanctions; (2) the danger of error and the benefit of alternate procedures; and (3) the public or governmental burden of these alternate procedures. *Flaim*, 418 F.3d at 635.

[6] Where, as here, the institution takes action against a student for a conduct violation, as opposed to an academic reason, a "more searching inquiry" is warranted. *Yoder v. Univ. of Louisville*, 526 F. App'x 537 (6th Cir. 2013) (quoting *Flaim*, 418 F.3d at 634).

2d 725 (1975) (emphasis in original)). This does not mean that a student is entitled to the full panoply of rights afforded to criminal defendants, nor does it imply that a school must employ procedures used in criminal trials. *Flaim*, 418 F.3d at 635 and n.1; *see Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245, 1250 (E.D. Mich. 1984) ("While a university cannot ignore its duty to treat its students fairly, neither is it required to transform its classrooms into courtrooms."), *aff'd*, 787 F.2d 590 (6th Cir. 1986). Instead, due process is generally satisfied where the student is provided "an explanation of the evidence supporting the accusation and an opportunity to present an alternative version of the facts." *Flaim*, 418 F.3d at 634 (citing *Goss*, 419 U.S. at 581).

The allegations in the FAC bear out the fact that plaintiff was advised of the charges against her by defendant Dessin and was afforded a hearing where these charges were addressed. (FAC ¶¶ 36, 40, 42, 44.) Nonetheless, plaintiff alleges that the quality of the process failed to satisfy either prong of the due process analysis: notice and an opportunity to be heard. "Constitutionally adequate notice is that which provides a person with sufficient information to make the eventual hearing meaningful." *Jaber v. Wayne State Univ. Bd. of Governors*, 788 F. Supp. 2d 572, 576 (E.D. Mich. 2011) (quotation marks and citation omitted), *aff'd*, 487 F. App'x 995 (6th Cir. 2012). The stronger the private interest, however, the more likely a formal written notice—informing the accused of the charge, the policies or regulations the accused is charged with violating, and a list of possible penalties—is constitutionally required." *Flaim*, 418 F.3d at 635 (citing *Goss*, 419 U.S. at 584).

Plaintiff concedes that defendant Dessin "confronted her with allegations of handing in a paper with substantial unattributed material." (FAC ¶ 36.) Further, she does not dispute that she received written notice that she "submitted a thesis that was in large part drawn from sources without appropriate attribution" (*see* Doc. No. 15-1 at 166), nor that she was given a copy of the

Disciplinary Code, which provides that the failure "to adequately identify the extent of reliance on the work of another person" may result in expulsion. (Doc. No. 35-1 at 346, 350; *see* FAC ¶ 38.) Instead, she complains that she was never fully apprised of the seriousness of the charges because defendant Dessin never used the word "plagiarism." Plaintiff is splitting hairs. By definition, the failure to attribute or acknowledge the source of material is plagiarism.[7] *See, e.g.*, Dictionary.com ("an act or instance of using or closely imitating the language and thoughts of another author without authorization and the representation of that author's work as one's own as by not crediting the original author"), http://www.dictionary.com/browse/plagiarism (last visited June 28, 2016); Merriam-Webster's Lerner's Dictionary ("The act of using another person's words or ideas without giving credit to that person."), http://www.merriam-webster.com/dictionary/plagiarism (last visited June 28, 2016).

Further, her argument is not supported by the record. In her appeal to Dean Wilson, she, through counsel, readily conceded that, at the hearing "she admitted that she plagiarized" and that she "expressed to the Committee how sorry she [was] for her actions and accepted full responsibility for them." (Doc. No. 15-3 at 168; *see id.* at 171 [reiterating that plaintiff "has admitted to *plagiarism* and not adequately citing sources in those portions of her Thesis highlighted in yellow in the copy of the Thesis submitted to the Committee. She has taken full responsibility for her actions and has brought them to the attention of both her former and current bosses and apologized for her behavior to the Committee"]) (emphasis added). Plaintiff was aware that she was charged with plagiarism, and admitted that she had plagiarized portions of her

---

[7] It is worth noting that the Disciplinary Code, of which plaintiff admits she received a copy, also does not use the word "plagiarism." Rather, it provides that, in relevant part, a student violates the code if she "fails to adequately identify the extent of reliance on the work of another person." (Doc. No. 31-1 at 346.) Such a description closely tracks the language used by used by Dessin in her written and oral communications with plaintiff.

thesis. Her subsequent attempt to recast the record is unavailing.[8] *See also Williams*, 498 F. App'x at 536 ("when a written instrument contracts allegations in the complaint to which it is attached, the exhibit trumps the allegations") (citations omitted); *see, e.g., Moody*, 32 F. Supp. 3d at 874-75 (complaint allegation was clearly contradicted by document which the court was permitted to consider on Rule 12(b)(6) motion).

Equally devoid of legal significance is plaintiff's allegation that Dessin misled her as to the seriousness of the allegations by suggesting that she had "seen much worse," and by manipulating her into believing that if she admitted the charges she would be able to graduate on time. (FAC ¶¶ 36-37.) Assuming the truth of these allegations, it remains beyond dispute that plaintiff was advised that she was accused of violating the Disciplinary Code by plagiarizing a portion of her thesis, and the Disciplinary Code, of which she received a copy, specifically set forth expulsion as a possible consequence. "When all is said and done, this notice allowed her to prepare for the informal conference and defend against the charges in a meaningful, informed manner, which is all that matters, at least when it comes to notice." *Jaber*, 487 F. App'x at 997.[9]

Plaintiff also insists that she was given insufficient time in which to prepare for the hearing. While she admits that she received notice of the May 15, 2015 hearing at least one week in advance (FAC ¶ 40), she complains that less than twenty-four hours before the hearing, she was presented with a "newly marked-up document which contained not only Professor Vacca's

---

[8] Indeed, this type of pleading practice underscores the need for the rule that permits a defendant to attach to a Rule 12(b)(6) motion dispositive documents upon which the claims are based. Plaintiff is not entitled to rely on revisionist history to support a legally and factually deficient claim. *See Weiner*, 108 F.3d at 89.

[9] In *Jaber*, a Sixth Circuit panel determined that the student-plaintiff received constitutionally sufficient notice where she was orally informed that her degree could be revoked as a result of the charges of plagiarism against her. *Id*. at 997. In so ruling, the court found that the fact that university officials may have told her that the school had never taken such action in response to an allegation of plagiarism did "not change anything. There is a first time for everything. And [plaintiff] was told that this first time could be with her." *Id*. at 997.

notes regarding attribution, but additional portions of the thesis containing comments by Defendant Dessin herself." (*Id*. ¶ 42.) Yet, plaintiff does not allege that defendant Dessin's comments and mark-ups changed the nature of the charges against her, and she even admits that, in response to plaintiff's May 7, 2015 email inquiry regarding the evidence that would presented at the hearing, Dessin informed her that a more complete marked-up document would follow. (*See id*. ¶ 41.) More to the point, procedural due process does not require any "delay between the time notice is given and the time of the hearing." *Sterrett v. Cowan*, 85 F. Supp. 3d 916, 926 (E.D. Mich. 2015) (citing *Goss*, 419 U.S. at 582). The Court finds that, as a matter of law, plaintiff received constitutionally sufficient notice.[10]

Additionally, her newly minted allegation that she was denied sufficient time to respond to the revised marked-up document rings hollow. Far from seeking additional time, plaintiff actually requested an expedited hearing. (Doc. No. 15-3 at 170.) By acknowledging her conduct violation, she dispensed with the Committee's need to determine whether she violated the Disciplinary Code, permitting  the focus of the hearing to be the determination of an appropriate sanction.

Turning to second prong of the due process analysis, plaintiff alleges that the hearing that followed, which she has characterized as "kangaroo proceedings," was hopelessly flawed because defendant Dessin served as the investigator, the prosecutor, and witness, not to mention

---

[10] Plaintiff also alleges that she was rushed into attending the informal meeting with Dessin on May 6, 2015, during which she admitted to improper attribution. (FAC ¶¶ 34-35.) Yet, she does not allege that this pressure led her to admit to something she did not do. Further, in the hearing that followed a week later, plaintiff did not suggest that she had been rushed into admitting to unfounded charges. Rather, plaintiff admitted that she plagiarized her thesis, and, on appeal, she agreed "that her behavior warrant[ed] discipline." Indeed, she underscored the fact that she "accept[ed] full responsibility for her violation by requesting an expedited hearing[.]" (Doc. No. 15-3 at 168, 171.) Therefore, these allegations that the pre-hearing meeting was "rushed" are a red herring. *See Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.")

"a judge <u>and</u> jury[.]" (FAC ¶¶ 45, 47, emphasis in original; Doc. No. 23 at 223.) In fact, plaintiff complains that "Dessin violated Akron Law's own disciplinary code when she, a panel member, testified before panel members about her review of the thesis." (Doc. No. 23 at 223.)

The Court begins with two guiding principles. The first is that "in a university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias." *Hill v. Bd. of Tr. of Mich. State Univ.*, 182 F. Supp. 2d 621, 628 (W.D. Mich. 2001) (citing *Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 254 (8th Cir. 1985)); *see Doe*, 2016 WL 1161935, at *9 (acknowledging the presumption of honesty, and noting that a "plaintiff must allege facts sufficient to overcome this presumption, such as statements by board members or university officials indicating bias or a pattern of decision-making suggesting [impermissible influences].") (citations omitted). The second is that a claim that a school failed to follow its own procedure does not rise to the level of a due process violation. *Jaber*, 487 F. App'x at 998 (citing *DePiero v. City of Macedonia*, 180 F.3d 770, 787-88 (6th Cir. 1999)); *Sterrett*, 85 F. Supp. 3d at 926 (citing, among authority, *JiQiang Xu v. Mich. State Univ.*, 195 F. App'x 452, 457 (6th Cir. 2006)). "'[I]t is only when the agency's disregard of its own rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions." *Jaber*, 487 F. App'x at 998 (quoting *Bates v. Sponberg*, 547 F.2d 325, 329-30 (6th Cir. 1976)).

The question then becomes whether Dessin's multifaceted role in the proceedings resulted in a procedure that impinged upon plaintiff's due process rights. While there is no universal agreement, courts, including the Sixth Circuit, have concluded that "[t]he impartiality demanded by due process does not preclude many common school disciplinary practices . . . [including practices whereby] the school official who initiates, investigates, or prosecutes

charges against a student plays a role" in deciding the appropriate disciplinary sanction. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 567-68 (6th Cir. 2011) (collecting, and citing with favor, cases from the Supreme Court and the Fifth, Seventh, Eighth, and Eleventh Circuits); *see Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 927 (6th Cir. 1988) (In a case where the principal investigated the misconduct and the superintendent initially ordered the expulsion, the court observed that "not only was it permissible for the school principal and superintendent to participate in the school board's deliberations, it would not be a denial of due process for them to have voted with the board, or even to have held the pre-expulsion hearing themselves and reached the final, binding decision concerning Newsome's expulsion.") (citing *Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985)).

In *Heyne*, a student brought a civil rights action challenging his suspension from school. In affirming the district court's denial of qualified immunity on the student's procedural due process claim, the court underscored the fact the complaint allegations—which included statements the principal had made to faculty and staff that suggested a racial bias—"could give rise to a valid claim for infringement of the due process right to an impartial decisionmaker in the context of student discipline." *Id.* at 569 (collecting cases). Unlike the complaint in *Heyne*, the FAC is devoid of any factual allegations that, if believed, would suggest defendant Dessin, or any other member of the Committee, had a bias such that the presumption of honesty and integrity in the proceedings would be overcome. While plaintiff offers the conclusory allegation that Dessin "exhibited bias and prejudice and prevented a fair adjudication of the matter[,]" the only factual allegations she offers in support are the fact that Dessin violated the Disciplinary Code when she testified before the Committee, and refused to permit plaintiff to offer certain evidence. (FAC ¶¶ 45, 48.) Of course, Dessin's purported violation of the Disciplinary Code,

alone, is insufficient to establish a due process violation. *See Jaber*, 487 F. App'x at 998; *Flaim*, 418 F.3d at 640 (quotation marks and citation omitted); *Sterrett*, 85 F. Supp. 3d at 926.

As for her complaint that Dessin refused to permit her to offer a binder containing her medical records (*see* FAC ¶ 48), the court in *Flaim*, relying on *Goss*, made clear that the purpose of "ensuring the presence of 'fundamentally fair procedures [was] to determin[e] whether the misconduct has occurred.'" *Flaim*, 418 F.3d at 634 (quoting *Goss*, 419 U.S. at 574). The existence of plaintiff's medical conditions would have had no bearing on whether the Disciplinary Code violation of plagiarism actually occurred. Still, such evidence could *arguably* be relevant to the question of mitigation of punishment.[11] *See Betts v. Bd. of Educ. of Cty. of Chicago*, 466 F.2d 629, 633 (7th Cir. 1972) (due process may contemplate affording the plaintiff an opportunity to be heard on the question of what discipline is warranted by the identified offense) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). However, it is clear from the record that plaintiff was permitted to offer both her and her father's testimony regarding her various medical conditions at the hearing, and was further permitted to raise her alleged disabilities on appeal to defendant Wilson. (Doc. No. 15-3 at 169; FAC ¶¶ 49-50.) Under these circumstances, plaintiff's allegation that Dessin did not permit  presentation of *all* of the evidence plaintiff  wished to offer on mitigation cannot rise to the level of an impermissible bias.

As to her conclusory allegation that her appeal was "summarily" denied without

---

[11] The Disciplinary Code does permit a student to "present evidence on his or her own behalf respecting whether a violation occurred or in mitigation of punishment." (Doc. No. 35-1 at 349.) As previously stated, however, a violation of a school's internal procedure cannot support a due process violation unless the violation, itself, resulted in a constitutionally unfair proceeding. *See Jaber*, 487 F. App'x at 998; *Sterrett*, 85 F. Supp. 3d at 926.

reference to her specific arguments, it is both irrelevant and inaccurate. (*See id*. ¶ 51.) In a multi-page decision, Wilson specifically addressed plaintiff's arguments—including "'mitigating factors' including overextending [herself] during [her] third year of law school while experiencing significant health challenges." (Doc. No. 15-5 at 176.) While defendant Wilson "empathize[d] with [her] physical struggles" he found that her dishonest and unethical conduct was "unacceptable[,]" and warranted expulsion. (*Id*. at 177.) Plaintiff was afforded a full and fair opportunity to present an alternative version of the facts, which included her position on mitigation, and the Due Process Clause requires no more. *See, e.g., Jaksa*, 597 F. Supp. at 1250 (student was not deprived procedural due process merely because he was not allowed to offer repetitive arguments)

Taken as a whole, the process afforded plaintiff was constitutionally sufficient. Thus, plaintiff's attacks upon the procedure employed by Dessin, Wilson, and the Committee are insufficient, as a matter of law, to set forth a procedural due process violation. University defendants are entitled to dismissal of this claim.

### *Substantive Due Process*

Plaintiff's substantive due process claim is also legally insufficient. Substantive due process, the other prong of the Due Process Clause, protects an individual's "right to be free of 'arbitrary and capricious' action by government actors." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citation omitted). Courts generally recognize two types of substantive due process claims—those that deprive an individual of a fundamental right and deprivations that "shocks the conscience[.]" *Mertlik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993) (citations omitted); *see Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) (citation omitted). Fundamental rights are strictly limited to rights "implicit in the concept of ordered liberty," such

22

as the right to marry, to have children, to use contraception, and to rear and educate one's children. *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (citation omitted). The Sixth Circuit has held that a college student's interest in continuing her education does not rise to the level of a fundamental right and that, in the absence of an equal protection violation, it cannot support a substantive due process claim. *See Martinson v. Regents of Univ. of Mich.*, 562 F. App'x 365, 375 (6th Cir. 2014) (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 251 (6th Cir. 2003) (medical student could not ground a substantive due claim in her right to continue her graduate school education)); *Rogers v. Tenn. Bd. of Regents*, 273 F. App'x 458, 463 (6th Cir. 2008); *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 436-37 (6th Cir. 2006). Plaintiff argues, however, that she has properly pleaded a substantive due process claim under the "shocks the conscience" standard. (Doc. No. 23 at 224 ["Stated simply, the behavior of Dessin and Wilson shocks the conscience."]; *see* FAC ¶ 60.)

"'[O]nly the most egregious official conduct' shocks the conscience." *Doe v. The Ohio State Univ.*, 136 F. Supp. 3d 854, 868 (S.D. Ohio 2016) (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1988)). "Such conduct includes actions 'so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency.'" *Range v. Douglas*, 763 F.3d 573, 589-90 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 140 L. Ed. 2d 1043 (1998) (further citation omitted)); *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987) (describing conscience shocking conduct as that which was "inspired by malice or sadism" or represented a "brutal and inhumane abuse of official power") (quotation marks and citations omitted); *see also Peavey v. Univ. of Louisville*, 834 F. Supp. 2d 620 (W.D. Ky. 2011) (noting that "the Sixth Circuit has indicated situations that shock the [conscience] are almost exclusively ones involving excessive

23

force") (citing *Pusey v. City of Youngstown*, 11 F.3d 652, 656-57 (6th Cir. 1993)). In support of her substantive due process claim, plaintiff avers:

> Defendants' conduct of expelling [plaintiff] shocks the conscience. Such conduct included, but is not limited to, the failure to delay Committee meetings despite notice of [plaintiff's] severe medical conditions, the failure to allow [plaintiff] adequate time to review the additional allegations made by Defendant Dessin, the failure to allow adequate time to prepare for the hearing and to present pertinent evidence, violated [plaintiff's] rights under federal law. The pervasive involvement of Defendant Dessin in the Committee's hearing, e.g., gathering evidence, leading the proceedings, testifying as a witness, evaluating the evidence and voting was particularly egregious conduct for which Defendants are responsible. By expelling [plaintiff] without substantial, sufficient, and untainted evidence, Defendant[s] violated her rights.

(FAC ¶ 60.) In other words, plaintiff relies on the same alleged misconduct that she cites in support of her procedural due process claim.

Yet, plaintiff has not pointed to any conduct that could be characterized as "'inspired by malice or sadism'" or a "'brutal and inhumane abuse of official power.'" *See, e.g., Doe*, 136 F. Supp. 3d at 869 (initiation of an investigation into student's alleged misconduct did not shock the conscience) (quoting *Webb*, 828 F.2d at 1158). Her conclusory allegation alone, therefore, that such conduct "shocks the conscience," is insufficient to support this claim. *See Mixon*, 193 F.3d at 400. Because plaintiff's complaint allegations, even if believed, do not suggest conduct that would rise to the level of a substantive due process violation, University defendants are entitled to dismissal on this claim, as well.

*Qualified Immunity*

Even if the Court were to conclude that the complaint states claims for violations of the Due Process Clause, defendants argue that the factual allegations show that the individual defendants are entitled to qualified immunity from suit in their personal capacities on these claims. Plaintiff offers no opposition to defendants' argument that Wilson and Dessin are entitled

to qualified immunity in the individual capacity claims. Instead, she directs the Court's attention to the fact that she has also sued these individuals in their official capacities. The Eleventh Amendment precludes suits in federal court for money damages against state entities. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). Claims against public universities and university officials acting in their official capacities are considered actions against the state for purposes of the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Nonetheless, the Eleventh Amendment does not bar § 1983 actions brought against state officials in their official capacities seeking prospective relief. *Williams v. Commonwealth of Ky.*, 24 F.3d 1526, 1544 (6th Cir. 1994); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) (citation omitted). Accordingly, Wilson and Dessin are not immune to suit in their official capacities if plaintiff seeks "prospective relief to end a continuing violation of federal law." *Diaz*, 703 F.3d at 964.

Plaintiff highlights the fact that she has sought declaratory and injunctive relief. However, a review of the FAC reveals that the alleged violations of federal law are predicated on past acts, not continuing conduct. The dismissal from the law school occurred in 2015, and while she seeks declaratory and injunctive relief, she does not allege an ongoing violation. (*See* FAC at 336 [relief sought includes "reversing the outcome and findings of plagiarism, correcting the academic record and issuing [plaintiff] a J.D. and allowing [plaintiff] to complete her L.L.M. program"). *See Brown v. Strickland*, No. 2:10-cv-166, 2010 WL 2629878, at *4 (S.D. Ohio June 28, 2010) ("a declaratory judgment against state officials declaring that they violated federal law in the past constitutes retrospective relief, and is barred by the Eleventh Amendment") (citing *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985)); *see, e.g., Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 7254213, at *13 (S.D. Ohio Nov. 17, 2015)

(university officials were entitled to Eleventh Amendment immunity for constitutional claims brought against them in their official capacities, notwithstanding request for injunctive relief, where no ongoing violation alleged). Because the alleged violations of federal law are not threatened or ongoing, the Court finds that Wilson and Dessin are entitled to Eleventh Amendment immunity on Counts One and Two to the extent they are brought against them in their official capacities. Therefore, Eleventh Amendment immunity simply provides one more reason why she cannot maintain her official capacity due process claims against Dessin and Wilson.

Turning to the personal capacity due process claims and the issue of qualified immunity, it is well settled that this immunity analysis proceeds in two stages. First, the Court considers the "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). If that question is answered in the affirmative, the Court next asks "whether the right was clearly established . . . in light of the specific context of the case[.]" *Id.* "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quotation marks and citations omitted); *see Plumhoff v. Rickard*, --U.S.--, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014) ("[A] defendant cannot be said to have violated a clearly established right unless the contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate.") (quotation marks and citations omitted); *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) (In

determining whether a constitutional right is clearly established, a district court looks for binding Supreme Court or Sixth authority, or finally, in extraordinary cases, decisions of other circuit courts.) (citation omitted). A district court enjoys "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (observing that, while the two-stage *Saucier* protocol approach is no longer mandatory, the Supreme Court "continue[s] to recognize that it is often beneficial").

When a defendant raises a qualified immunity defense, the burden is on the plaintiff to prove that the officials are not shielded by qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citation omitted); *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (The plaintiff bears the ultimate burden of proving "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct.") (citation omitted). "Stated differently, the issue is 'whether the defendant had fair warning that their actions were unconstitutional.'" *Ward v. Members of Bd. of Control of E. Mich. Univ.*, 700 F. Supp. 2d 803, 813 (E.D. Mich. 2010) (quoting *Grawey v. Drury*, 567 F.3d 302, 313-14 (6th Cir. 2009)).

Plaintiff has not even attempted to satisfy this burden. Nonetheless, the Court, out of an abundance of caution, considers the question of whether, based on the pleadings, Wilson and Dessin are entitled to judgment in their favor on the availability of qualified immunity.

Plaintiff's substantive due process right to continue her law school education to completion free of arbitrary and capricious state action is not clearly established. The Supreme Court has never recognized such a right, and has only been willing to assume *arguendo* that such

27

a right exists for purposes of determining whether the facts alleged would support such a right. *See, e.g., Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222-23, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985). Likewise, while the Sixth Circuit has assumed *arguendo* that such a right exists for purposes of discussion, it has refused to recognize such a right in the absence of an equal protection violation. *See, e.g., Bell*, 351 F.3d at 251. Because this right has not been clearly established by binding precedent, the Court finds that Dessin and Wilson would be entitled to qualified immunity on plaintiff's substantive due process claim.

The same holds true for plaintiff's procedural due process claim. While there is binding precedent that establishes that university students are entitled to due process before they are subjected to disciplinary sanctions, as set forth above, it has not been clearly established that plaintiff was entitled to all of the procedural protections she complains were missing from her disciplinary proceedings. In fact, in many respects, plaintiff received more process than mandated by the Due Process Clause. *See Flaim*, 418 F.3d at 640-43 (no due process right to counsel in non-complex student disciplinary proceedings, no right to written fact findings, and no right to an appeal). Therefore, it cannot be said that the contours of the rights were sufficiently definite that any reasonable official would have known that her procedural due process rights were being violated. *See, e.g., Doe*, 2016 WL 1161935, at *13 (university officials were entitled to qualified immunity where it was not clearly established that student was entitled to individual procedural protections prior to being dismissed for violating school's conduct code). This is especially true given the fact that the record establishes that plaintiff was supplied with notice of the charges against her before she admitted to a Disciplinary Code violation, was provided a hearing on the charges where she was represented by counsel and allowed to offer witness testimony, was supplied with written fact findings from the Committee, and was

28

permitted an opportunity to appeal the decision. Accordingly, defendants Wilson and Dessin are entitled to qualified immunity on plaintiff's procedural due process claim.

### ADA and Rehabilitation Claims

In Count Three, plaintiff alleges that the University defendants[12] failed to adequately accommodate her disabilities, in violation of Title II of the ADA. Court Four raises a similar claim under Section 504 of the Rehabilitation Act. "Claims brought under the Rehabilitation Act are generally reviewed under the same standards that govern ADA claims." *Shaikh v. Lincoln Mem. Univ.*, 608 F. App'x 349, 353 (6th Cir. 2015) (citing *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010)). Accordingly, the Court shall consider the sufficiency of the two claims together. *See, e.g., Carten v. Kent State Univ.*, 78 F. App'x 499, 500 (6th Cir. 2003).

In order to establish a *prima facie* case for failure to accommodate, plaintiff must establish that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to continue in the academic program with or without reasonable accommodation; (3) the school knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the school failed to provide the necessary accommodation. *See generally Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)); *see also Shaikh*, 608 F. App'x at 353. Defendants argue that plaintiff has failed to set forth factual allegations that, if believed, would establish that she is a disabled person under the ADA, that University defendants were aware of

---

[12] These claims are brought against defendants Dessin, Banks, and Wilson in their official capacities only. *See Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) ("neither the ADA nor the RA allows suits against government officials in their individual capacity") (citations omitted).

any qualifying disability, and that plaintiff requested an accommodation. Because the Court finds that plaintiff failed to allege facts sufficient to establish that defendants were aware of her disability or that she made a proper request for an accommodation, the Court need not consider whether she was a qualified individual with a disability.

"A publicly funded university is not required to provide accommodation to a student under the ADA or the Rehabilitation Act until the student provides a proper diagnosis of his claimed disability and specifically requests an accommodation." *Carten*, 78 F. App'x at 501 (citing *Kaltenberg v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998)); *Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789, 806 (N.D. Ohio 2015) (citation omitted). Plaintiff bears the burden of demonstrating that she requested an accommodation. *Buescher*, 86 F. Supp. 3d at 806 (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042 (6th Cir. 1998)).

While plaintiff alleges that she "has a documented psychiatric history of ADHD, anxiety and depression[,]" she fails to allege that, if this is indeed a proper diagnosis of a disability, she ever shared this documentation with, or otherwise produced a diagnosis to, any official at UA. (FAC ¶ 11.) Rather, her communications/interactions with UA personnel are alleged as follows:

- "On October 2, 2012, [plaintiff] met with Professor Stephen Cook who operated the Sounding Board program, which was designed to provide assistance to struggling students. After meeting with Professor Cook, [plaintiff] met with psychologist Eric Hayden, Ph.D. at the University of Akron Counseling Center several times between October and December of 2012." (FAC ¶ 12.)

- "During her first year of law school, [plaintiff] also reported her depression and anxiety to Professor Richard Cohen who was her LARW I and II instructor." (FAC ¶ 13.)

- "On November 17, 2014, [plaintiff] notified her professors about her fall [down a flight of stairs at a sporting arena] and requested that her classes be recorded for her because she was unable to attend." (FAC ¶ 17.)

- On December 1, 2014, and December 23, 2014, she again sought treatment for

depression and anxiety at the University of Akron Student Health Center." (FAC ¶ 18.)

- Plaintiff "emailed her professors to advise them of her concussion and that she needed to miss classes." (FAC ¶ 21.)

- When she requested additional time from Professor Vacca in which to complete her thesis, she advised him that "she was experiencing a difficult year, both personally and professionally, and that she would provide a draft of the thesis as soon as possible." (FAC ¶ 22.)

- "On April 13, 2015, while hospitalized, [plaintiff] emailed Defendant Banks and requested assistance with notifying her professors about her hospitalization so that classes could be recorded for her." (FAC ¶ 24.)

- In an email, dated April 21, 2015, plaintiff advised defendant Banks that "she continued to struggle with medical problems and that she was extremely worried about the effect of her poor health on her academic performance." (FAC ¶ 25.)

- On April 29, 2015, plaintiff "emailed Professor Jacqueline Lipton to reschedule a meeting with her. [Plaintiff] explained that she received an epidural on April 28, 2015 and that the anesthesia was still affecting her." (FAC ¶ 29.)

- On May 4, 2015, plaintiff "emailed Defendant Banks to request accommodations for her final exams. [Plaintiff] stated that due to her back pain, she was concerned about whether she would be able to sit for a three hour examination period. [Plaintiff] explained that she was worried about her back pain impacting her exam performance. She requested an additional ten to fifteen minutes of exam time for purposes of walking and/or stretching her back. No accommodations were granted." (FAC ¶ 32.)

- Plaintiff "advised Defendant Banks that she did not feel she was in any condition to take her examinations. Defendant Banks advised [plaintiff] that she must take her examinations as scheduled." (FAC ¶ 39.)

Absent from the FAC are any allegations that plaintiff presented a diagnosis of a recognized disability to any official at UA. Comments, such as she was "experiencing a difficult year", or that she "continued to struggle with medical problems", cannot possibly be construed as a proper diagnosis. Likewise, the fact that she advised various professors that she needed to miss classes because of an illness or injury, or even that she "reported her depression and anxiety" to

her writing instructor, does not come close to satisfying this requirement. *See Kaltenberg*, 162 F.3d at 437 ("That plaintiff told an academic counselor at the College that she thought she might have adult attention deficit disorder simply did not impose an obligation to offer accommodations.") (citation omitted). Along these same lines, the fact that she received treatment at UA's counseling center, alone, was insufficient to trigger UA's duty to accommodate a documented disability, where there are no allegations that she received a diagnosis from the counselling center, released any diagnosis to UA officials, or requested a specific accommodation during these sessions or thereafter. *Id.* (no evidence that plaintiff released an evaluation from the university's counselling services to the college). Additionally, while plaintiff alleges that UA officials failed to engage her in an interactive process designed to identify appropriate accommodations (*see* FAC ¶¶ 24, 35), plaintiff fails to allege that any of these failures was preceded by her submission of a diagnosis and a specific request for an accommodation. *See Downey v. Crowley Marine Servs., Inc*., 236 F.3d 1019, 1023 n.6 (9th Cir. 2001) (The "obligation to engage in an interactive process . . . to find a reasonable accommodation is triggered by [the individual] giving notice of the . . . disability and the desire for accommodation.") (citation omitted). Because the complaint allegations are insufficient to establish, if believed, that plaintiff presented a qualifying diagnosis and requested a specific accommodation, she cannot maintain her accommodation claims.

## IV. CONCLUSION

For the reasons set forth herein, plaintiff's motion to amend is granted in part, ODHE's

motion for judgment on the pleadings is denied as moot, and University defendants' dispositive motion is granted.

**IT IS SO ORDERED**.

Dated: July 28, 2016

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**